**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MRI Software, LLC,** ) | **CASE NO. 1:17 CV 531** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **Sage Management, LLC,** ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendant.** ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff MRI Software LLC's Motion to Dismiss Defendant Sage Management LLC's Counterclaim (Doc. 15). This is a breach of contract case. For the reasons that follow, the motion is GRANTED in PART and DENIED in PART. Sage may not base its negligent misrepresentation claim on any statement made by MRI that MRI promised to bear responsibility for obtaining data from Home Properties. The motion is DENIED in all other respects.

**FACTS**

For purposes of ruling on the instant motion, the facts asserted in the counterclaim are

1

presumed true.

Plaintiff, MRI Software ("MRI") brings this lawsuit against defendant Sage Management, LLC ("Sage") asserting wrongdoing in connection with the performance of an agreement between the parties. Specifically, MRI sells real estate management and investment software, as well as related services. According to the complaint, Sage and MRI entered into a five year contract. MRI alleges that the contract consists of a number of parts. Specifically, MRI claims that the parties' entire agreement is contained in the following documents: Master Agreement, a SaaS Services Schedule, a Limited Software License and Maintenance and Support Schedule, a Global Client Support Policy, a Professional Services Schedule, and a Statement of Work and Order Documents. As part of the parties' agreement, Sage was to provide property data to MRI in a proper form. In the event Sage did not own the data, Sage was to arrange for the owner to provide the data to MRI. According to MRI, the effective date of the parties' agreement is March 1, 2015. Within a few weeks, Sage informed MRI that it would not make payments to MRI and, on June 5, 2015, Sage purported to cancel the parties' agreement. According to the complaint, Sage owes approximately $144,000 under the terms of the agreement.

Thereafter, MRI brought this lawsuit asserting two claims for relief. Count one is a claim for breach of contract and count two is a claim for promissory estoppel.

In response to the complaint, Sage asserted a two-count counterclaim. According to the counterclaim, MRI made several misrepresentations during the period leading up to the agreement. Specifically, Sage alleges that MRI indicated that it "had the requisite skills and experience to prepare and implement the system 'quickly' and 'seamlessly' in order to allow

Sage to perform 'daily management tasks' within days after Sage ordered the product." (Doc. 14 at ¶ 5). In addition, Sage alleges that MRI's account executive, James Cramer, represented to Sage that "MRI would handle the transfer of data from Home Properties to MRI and promised that MRI would deal directly with Home Properties, the company from whom data was to be transferred." (Doc. 14 at ¶ 6). According to the counterclaim, MRI communicated directly with Home Properties in an attempt to secure the transfer of data. The data was never transferred and MRI never performed any services. MRI nonetheless invoiced Sage for services that were never provided. Soon thereafter, Sage sent a termination letter to MRI and demanded that MRI cease sending invoices. MRI sent a demand letter seeking approximately $144,000, which represents full payment for the entire five year contractual period.

The counterclaim contains two claims. Count one seeks a declaratory judgment regarding the enforceability of the agreement and claims that a number of the provisions are unconscionable. Count two is a claim for negligent misrepresentation.

MRI moves to dismiss the counterclaim in its entirety on the basis of the parol evidence rule and the limitations period contained in the agreement. Sage opposes the motion.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re*

*DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702 (6th Cir. Nov. 21, 1996), *unpublished.* Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id.* at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009).

**ANALYSIS**

1. Parol evidence rule

MRI argues that the counterclaim should be dismissed because it violates the parol evidence rule. According to MRI, the agreement is a fully integrated contract and any claim that MRI bore the responsibility to obtain the data from Home Properties is directly contradicted by

4

the express terms of the parties' agreement. As such, Sage cannot base any claim on the purported failure of MRI to obtain the data. In response, Sage argues that the parol evidence rule does not apply to its claim for negligent misrepresentation. In addition, Sage claims that MRI waived certain terms of the parties' agreement. According to Sage, its declaratory judgment claim relies on fact intensive inquiries regarding the conscionability of various provisions in the agreement. Sage further notes that it denied entering into the Master Agreement, which is unsigned.

Upon review, the Court finds that dismissal of the counterclaim in its entirety is not proper at this stage in the litigation. The Court, however, agrees with plaintiff that the counterclaim cannot be based on the allegation that MRI negligently misrepresented that it would bear responsibility for obtaining the data from Home Properties. Here, Sage alleges that "MRI would handle the transfer of data from Home Properties to MRI and promised that MRI would deal directly with Home Properties, the company from whom data was to be transferred." These allegations, however, are directly contradicted by the express terms of the parties' agreement. By way of example, Order Document #2, which is signed by Sage, expressly provides that Sage "is responsible for providing property data to MRI in a cleansed format acceptable to MRI...." (Doc. 7 at PageID 57). Similarly, the Order Document and Statement of Work ("SOW"), which is also signed by Sage, indicates that "Sage will arrange for the owner of the source database to provide a SQL backup of their database." (Doc. 7 at PageID 59). That same document further provides that it is the responsibility of Sage to obtain permission from a third-party owner of data and that the lack of authorization does not excuse Sage's performance under the terms of the SOW. The allegation that MRI promised that it would handle the transfer

5

data and deal directly with Home Properties is expressly contradicted by the express terms of the parties' agreement.[1] As such, it cannot form the basis of a negligent misrepresentation claim. *See, e.g., Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 662 N.E.2d 1074, 1080-81 (Ohio 1996)(holding that parol evidence rule bars negligent misrepresentation claim where the alleged misrepresentation pertains to the same subject matter as the written agreement). Sages's citations to the contrary are not on point because the negligent misrepresentation at issue in those cases did not expressly contradict contractual language. *See, Academic Imaging, LLC v. Soterion Corp.*, 352 Fed. Appx. 59 (6th Cir. 2009)(representation regarding calculation of purchase price was "independent of" and "consistent with" the parties' agreement). Because the clear and unambiguous language in the agreement provides that Sage is responsible for securing transfer of the data, a claim for negligent representation based on precisely the opposite statement will not lie.[2]

On the other hand, Sage points out that it expressly alleges in the counterclaim that MRI promised that it possessed the skill and experience to implement the software system "quickly"

---

[1] Although Sage argues that it never signed the Master Agreement, its signature appears on the documents referenced in this Opinion. Regardless, as MRI points out, Order Document #1, which is signed by Sage, expressly provides that the parties' relationship is governed by the Master Agreement. Sage makes no argument as to why the Court should not enforce the terms of the Master Agreement through Order Document #1.

[2] Sage relies on the unreported case of *Canfic Resources Ltd. v. Dal-Ken Corp.*, 1990 WL 34771 (Oh Ct. App. March 29, 1990) for the proposition that oral representations that contradict the terms of the contract may form the basis of a negligent misrepresentation claim. In that case, however, the plaintiff sought to assert a claim for negligent misrepresentation against a non-party to the contract. That situation is not present in the case before this Court.

6

and "seamlessly" and that the system would be implemented "within days" after Sage ordered the software. (Doc. 14 at ¶ 5). The Court agrees with Sage that MRI fails to point to any contractual term that directly contradicts these statements. Rather, Sage alleges that these statements induced it to enter into the agreement. Because the parol evidence rule does not preclude such a claim, the Court finds that Sage's counterclaim cannot be dismissed to the extent Sage relies on the alleged misrepresentations set forth in Paragraph five of the counterclaim.

Sage further argues that MRI's conduct can be relied on to establish a waiver of certain contractual terms. In other words, Sage claims that the law permits it to rely on contradictory actions in order to establish waiver. Sage relies on *Norris v. Royal Indem. Co.*, 485 N.E.2d 754, 756 (Oh. Ct. App. 1984) for the general proposition that "evidence about waiver and estoppel does not contravene the parol evidence rule for the interpretation of written documents....It has no application to evidence about subsequent oral modifications of a written agreement or waiver of an agreement's terms by language or conduct." Although MRI filed a reply brief, it did not respond to Sage's argument regarding waiver. As such, the Court finds that at this point in the litigation, Sage may rely on MRI's conduct in support of its waiver argument.

2. Limitations period

MRI argues that the Master Agreement contains a one-year statute of limitations period that bars Sage's claims. According to MRI, the claims at issue arose more than one year prior to the filing of the counterclaim. In response, Sage argues that it did not sign the Master Agreement. In addition, Sage argues that the provision is unconscionable and that is expressly alleges as such in its counterclaim. According to Sage, the provision is one-sided and does not apply equally to MRI. Here, Sage claims that MRI waited until more than one year passed in

7

order to prevent Sage from asserting claims related to the Master Agreement. Although filing a reply brief, MRI does not respond in any fashion to Sage's unconscionability arguments. Rather, MRI argues only that Sage agreed to the terms of the Master Agreement by signing Order Document #1. Assuming *arguendo* the accuracy of MRI's position, MRI wholly fails to address Sage's allegation and argument regarding unconscionability. The Court will not, at this stage in the litigation, *sua sponte* assess the conscionability of Paragraph 8.6. Accordingly, MRI's motion to dismiss based on the contractual limitations period is denied.

### **CONCLUSION**

For the foregoing reasons, Plaintiff MRI Software LLC's Motion to Dismiss Defendant Sage Management LLC's Counterclaim is GRANTED in PART and DENIED in PART. Sage may not base its negligent misrepresentation claim on any statement that MRI promised to bear responsibility for obtaining the data from Home Properties. The motion is DENIED in all other respects.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 8/15/17